**Vernita Schmidt LOESCH, et vir., Appellants,**

v.

**OASIS PIPE LINE COMPANY, Appellee.**

**No. 13,844.**

Court of Appeals of Texas, Austin.

Feb. 1, 1984.

Rehearing Denied Feb. 29, 1984.

Sidney Levine, Sealy, for appellants.

Harry M. Reasoner, Vinson & Elkins, Houston, for appellee.

Before SHANNON, POWERS and BRADY, JJ.

POWERS, Justice.

Vernita Schmidt Loesch appeals a final judgment entered by the district court in a statutory proceeding in eminent domain. Tex.Rev.Civ.Stat.Ann. arts. 3264–71 (1968 & Supp.1982). The proceeding was instituted by Oasis Pipeline Company for the purpose of acquiring an easement across Loesch's property, over which Oasis intends to construct a sixteen-inch pipeline for the transport of natural gas.[1] Loesch contends on appeal, as she did in the trial court, that Oasis was not a "gas utility" under the provisions of Tex.Rev.Civ.Stat. Ann. arts. 1435 and 1436 (1980); and consequently, that Oasis is not a corporation having the power of eminent domain. We conclude differently and will affirm the judgment of the trial court.

A person's property may not, unless he consents, "be taken ... for or applied to public use without adequate compensation being made ...." Tex. Const., Art. I, § 17 (1955). The proceedings for acquiring private property for public use, and for fixing adequate compensation therefor, are specified by statute.

When real estate is desired for public use by the State or by ... a corporation having the right of eminent domain, ... the party desiring to condemn the property ... shall file a statement in writing with the county judge of the county in which the land or a part thereof is situated.

Tex.Rev.Civ.Stat.Ann. art. 3264 (1968).

On the issue of public use, Loesch argues that Oasis will not, under the undisputed evidence, transport its own gas but that it will transport only natural gas owned by its shareholders who are themselves corporations: Houston Natural Gas Company, Dow Chemical Company, U.S.A., and Tennegasco, Inc. Moreover, the evidence is undisputed that Oasis has no employees and that the actual transportation of natural gas through the pipeline will be managed and conducted by yet another corporation, Intratex Gas Company, "a wholly-owned subsidiary of Houston Natural Gas Corporation." Finally, it is undisputed that the natural gas transported through the proposed pipeline will ultimately be sold to "Houston Natural Gas Corporation, Entex, Southern Union, and Houston Pipeline Company." From these facts, Loesch reasons that the pipeline proposed to be erected across her property is essentially for the private use and benefit of these corporations in their business endeavors.

The controlling principles by which we evaluate Loesch's contentions are as follows:

[W]e are not inclined to accept that liberal definition of the phrase "public use" adopted by some authorities, which makes it mean no more than the public welfare or good, and under which almost any kind of extensive business which promotes the prosperity and comfort of the country might be aided by the power of eminent domain.... [P]roperty is taken for public use as intended by the Constitution only when there results to the public some definite right or use in the business or undertaking to which the property is devoted.... *[T]his public right or use should result from the law itself, and not be dependent entirely upon the will of the donee of the power*

---

1. Oasis Pipeline Company is shown by the undisputed evidence to be a corporation organized and existing under the laws of the State of Delaware and possessed of authority to conduct business in the State of Texas.

.... We think it obvious, however, that *if it can be gathered from all the provisions of a statute that the recipient of the power is charged with duties to the public, or that a right of use in that for which the property is taken is secured to the public,* the manner in which or the form of expression by which it is done is immaterial to such an inquiry as this. We think it further true that the courts cannot inquire into the wisdom or expediency of the regulations adopted by the Legislature for the protection of the public, further than to see that a public use is secured. *The question whether or not a public use springs from a law granting the right of eminent domain to a corporation is largely influenced by the character of the franchise granted to it and the business it is authorized to carry on.*

*Borden v. Trespalacios Rice & Irrigation Co.,* 98 Tex. 494, 86 S.W. 11, 14 (1905) (emphasis added).

The certificate of incorporation introduced in evidence by Oasis shows that among its authorized powers are those to construct and own pipelines for the transmission of "gas"; to "transmit, transport, ... furnish and deliver ... natural gas, ..."; "[t]o transport gas under contract for other gas utilities or industrial firms owning such gas"; and the power of eminent domain. Nothing in the certificate precludes the corporation from exercising such powers in an area or manner regulated by the State. We turn then to the first of the two disjunctive propositions: may one gather "from all the provisions of a statute" that Oasis is "charged with duties to the public"; if so, we need not consider whether the public will have a right of use in the proposed pipeline.

Under Tex.Rev.Civ.Stat.Ann. art. 1436, the power of eminent domain is given to the corporations specified in art. 1435. In the revised statutes, the two articles lack a clarity of meaning they possessed in the single legislative enactment from which both derive. In their original form, in an act "authorizing the formation of corporations for the purpose of generating, manufacturing, transporting and selling gas, electric current and power," they read as follows:

Section 1. That any number of persons, not less than three, may organize themselves into a corporation for the purpose of generating, manufacturing, transporting and selling gas, electric current and power in this State.

\*     \*     \*     \*     \*     \*

Section 3. Such corporation shall have the power to generate, make and manufacture, transport and sell gas, electric current and power to individuals, the public and municipalities for light, heat, power and other purposes, and to make reasonable charges therefor; ....

Section 4. Such corporation shall have the right and power to ... condemn and appropriate the lands, right of way, easements and property of any person or corporation .... The manner and method of such condemnation shall be the same as is provided by law in the case of railroads, pipe lines, telephone and telegraph lines; ....

1911 Tex.Gen.Laws, ch. 111, at 228–29.

After the foregoing enactment was made part of the revised civil statutes of an earlier time (1936), the Supreme Court of Texas declared that articles 1435 and 1436, construed together with article 1302 § 14 and article 1438, as they then existed, *amount to a legislative declaration that* [the corporation's] *business is to be regarded as being affected with a public use,* in consequence of which it is delegated that small portion of the public authority denominated "the power of eminent domain"; so that, the resulting question, if any, is whether the legislature might reasonably have considered that use a public one, not whether the use itself is actually a public one.... Correlative burdens are, in turn, imposed upon such a corporation, as is expressly specified in our Article 1438, supra, which very plainly requires equality in service to all persons similarly situated and in like circumstances....

Our Article 1436, supra, also emphasizes that public policy [that corporations organized under art. 1435 are by legislative declaration affected with a public use in their exercise of any of the enumerated powers] in Texas, in that [art. 1435] places no express restrictions upon the power of a corporation ... to condemn land for the prosecution of the business it has been chartered to carry on; in other words, the legislature has therein delegated to such a corporation the right to fix the location—as well as the quantity—of the property it in good faith determines to be needed for the construction, maintenance, and servicing of its lines.

*Arcola Sugar Mills Co. v. Houston Lighting & Power Co.,* 153 S.W.2d 628, 633 (Tex.Civ.App.1941, writ ref'd) (emphasis added), construing the provision of Tex. Rev.Civ.Stat.Ann. arts. 1303, 1436, 1437 and 1438 (1936).

▆▆▆ In contrast to the single correlative burden imposed by the antidiscrimination provisions of the earlier art. 1438, our present statutes impose a full range of regulatory requirements upon a corporation purporting to exercise the power of eminent domain for the purpose of constructing a natural gas pipeline. Tex.Rev. Civ.Stat.Ann. art. 6050 (Supp.1982) provides as follows:

Section 1. In this article, "person" means ... [a] private corporation, .... In Articles 6050–6066, Revised Civil Statutes of Texas, 1925, as amended, "gas utility," "public utility," or "utility" means a person *owning,* managing, operating, *leasing* or controlling within this State any pipe lines ... for either one or more of the following kinds of business:

\* \* \* \* \* \*

(b) Owning *or* operating or managing a pipe line for the transportation or carriage of natural gas, *whether for public hire or not,* if any part of the right of way for said line *has been acquired, or is hereafter acquired by the exercise of the right of eminent domain.*

(emphasis added). We conclude from the foregoing statutory provision that Oasis is a "public utility," a "gas utility," or a "utility," and therefore subject to the onerous regulatory provisions contained in arts. 6050–6066 because in this case Oasis is seeking to acquire by exercise of the power of eminent domain an easement across Loesch's property for the undisputed purpose of transporting natural gas through a pipeline owned by it.[2] Our reasoning is not circular; rather we simply give effect to the foregoing statute—if a corporation, acting within its corporate powers, acquires land for a pipeline to be owned by it for the transport of natural gas, through an exercise of the power of eminent domain given in art. 1435, it thereby *submits* to the regulatory provisions of arts. 6050–6066 so that its ownership of the pipeline, under such regulations, is a "public use" by legislative declaration, irrespective of whether the pipeline is available for public use. *Arcola Sugar Mills Co. v. Houston Lighting & Power Co., supra.*

---

**2.** Under arts. 6050–6066, for example, a regulated utility must maintain an office in a county of the State wherein its property is located and keep in the office "all books, accounts, papers, records, vouchers and receipts which the Railroad Commission shall require." (art. 6052); its rates of charges are fixed and enforced by the Commission and the agency is required to establish "fair and equitable rules and regulations for the full control and supervision of said gas pipe lines and all their holdings pertaining to the gas business in all their relations to the public...." (art. 6053); the Commission must "prescribe and enforce rules and regulations for the government and control of such pipe lines in respect to their gas pipe lines and producing, receiving, transporting, and distributing facilities...." *id.*; the utility is subject to state control in matters pertaining to safety standards (art. 6053-1); its agreements with "any person or persons controlling such pipe lines establishing and prescribing prices, rates, rules and regulations and conditions of service" are subject to the Commission's review, revision and regulation (art. 6054); the owner as well as the operator of any gas pipe line must file with the Commission "sworn reports of the total quantities of gas distributed by such pipe lines and of that held ... in storage," and numerous other matters (art. 6056); the utility's gross receipts are taxed according to reports filed in the Commission (art. 6060); and the Commission may under certain circumstances obtain appointment of a receiver for such a utility (art. 6063).

In the present case, it is undisputed that Oasis was acting within its corporate powers, under a resolution of its board of directors that the easement across Loesch's land was necessary for the public interest, and that it relies upon the power of eminent domain given in art. 1436. In acquiring the easement under authority of that statute, Oasis submits to regulation by the State of Texas and thereby becomes charged with numerous statutory duties to the public. Hence its use of its pipeline is by legislative declaration a "public use" within the meaning of Tex. Const. Art. 1, § 17. *Borden v. Trespalacios Rice & Irrigation Co., supra.*

There being no other contentions of error on appeal, the judgment of the trial court is affirmed.